UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROCHESTER-GENESEE REGIONAL
TRANSPORTATION AUTHORITY,

                Plaintiff,             09-CV-6370-MAT

v.                                **DECISION**
                                      **and ORDER**

CUMMINS INC.,
CUMMINS NORTHEAST INC., and
GILLIG CORPORATION,

                Defendant.
_____

## INTRODUCTION

Plaintiff Rochester-Genesee Regional Transit Authority
("RGRTA") brings this action under Federal diversity jurisdiction
against defendants Gillig, Corp. ("Gillig"), Cummins, Inc., and
Cummins, Northeast, Inc. ("Cummins")[1] seeking damages in excess of
one million two hundred and fifty thousand dollars ($1,250,000.00).
RGRTA alleges claims against Gillig under theories of breach of
contract, breach of implied and express warranty, and negligence.
RGRTA alleges claims against Cummins under theories of breach of
contract, breach of implied and express warranty, negligence, and
strict products liability.  These claims all arise from a contract

---

[1]Cummins Northeast, Inc. is an authorized independent distributor for
Cummins, Inc. for the region which includes Rochester, N.Y.  See Cummins
Motion to Dismiss ("Cummins Motion") at 2.  As Cummins, Inc. and Cummins
Northeast, Inc., are treated collectively by all parties, they will heretofore
be treated collectively as "Cummins".

between RGRTA and Gillig for the purchase of fifty-nine public transit buses equipped with Cummins' engines.

Specifically, RGRTA claims that Gillig breached their contract by failing to deliver buses which met the specifications set forth in RGRTA's request for proposals ("RFP") as well as the recognized and accepted industry standards. Am. Compl. ¶ 81. Gillig allegedly breached their express warranty that the buses and engines would be free from defects by delivering to RGRTA buses and/or engines that were defective due to improper design or manufacture. Id. at ¶ 90. RGRTA further claims Gillig breached implied warranties of merchantability and fitness for a particular purpose, alleging that the buses were not merchantable and not suitable and safe for their intended purpose. Id. at ¶ 101. Finally, RGRTA claims that Gillig negligently failed to inspect, test, and discover the defective nature of the engines. Id. at ¶ 111.

RGRTA alleges that, as an intended third party beneficiary to a binding contract between Gillig and Cummins, it sustained damages as a result of Cummins' failure to design and manufacture engines in a professional and workmanlike manner in accordance with recognized industry standards. Id. at ¶¶ 85-86. Cummins allegedly expressly warranted that their engines would be free from defects and violated this warranty as the engines were defective due to improper design and manufacture. Id. at ¶¶ 94-98. The defective

nature of these engines also allegedly violated implied warranties
of merchantability and fitness for a particular purpose. Id. at
¶ 106. RGRTA also brings a claim of negligence, asserting that
Cummins' negligently failed to inspect, test, and discover the
defective nature of the engines, both prior to and following
delivery. Id. at ¶ 117. Finally, under a claim of strict products
liability, it is alleged that the engines designed and manufactured
by Cummins were unreasonably dangerous and defective. Id. at
¶ 123.

Defendants Gillig and Cummins have both moved to dismiss these
claims in their entirety, pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure, alleging that Plaintiff has failed to
state a claim for each and every cause of action. Both parties
claim that the breach of contract and implied warranty claims
against them should fail as they expressly disclaimed any
contractual or implied warranty obligations. See, Gillig
Memorandum ("Gillig Mem.") at 1; Cummins Memorandum ("Cummins
Mem.") at 1. Furthermore, Gillig denies providing any warranty
coverage for the engines in question, specifically excluding engine
coverage from their express warranty. Both parties claim that any
relevant warranty coverage had expired prior to the Plaintiff
experiencing the engine problems at issue. Cummins also denies
that the allegedly defective parts fall under this Extended
Warranty. Both defendants assert that the contract and warranty

3

claims relating to the first thirty buses delivered are time barred
as the buses were delivered more than four years prior to the
commencement of this action.

With respect to the claims of negligence, both parties deny
owing any duty to RGRTA outside of their contractual obligations.
Further, Defendants assert that these claims fail because RGRTA is
only seeking the cost of repairing or replacing damaged parts and
economic losses are not generally recoverable in tort actions.
Cummins asserts that the strict products liability claim brought
against them likewise fails under the economic loss doctrine.

**BACKGROUND**

In September 2002, RGRTA issued a request for proposals
("RFP")for the purchase of diesel transit buses. This RFP
requested a one-year warranty applicable to the buses and a
two-year warranty for the engines. It was requested that these
warranties provide coverage against defective materials and faulty
workmanship for the relevant period, to begin on the date of
delivery. Gillig submitted a proposal to provide these buses,
including with the proposal its "Low Floor Transit Coach Limited
Warranty Standard Coverage" ("Standard Warranty"). See Affidavit
of Brian Macleod, sworn to February 18, 2010 ("Macleod Aff."),
Ex. A. The terms of this proposal were accepted. On September 22,
2003, RGRTA and Gillig entered into an agreement whereby RGRTA
would purchase fifty-nine transit buses and several spare component

parts from Gillig. Pursuant to this agreement, Gillig would provide a one-year warranty applicable to the buses. A two-year warranty applicable to the engines would be provided by the engine manufacturer.

Prior to production, it was decided by both parties that the buses would be equipped with engines manufactured by Cummins rather than Detroit Diesel Engines as originally planned. Am. Compl. ¶ 30. The warranty information for the Cummins engines was provided to RGRTA. See Macleod Aff., Ex. A. This warranty provided by Cummins exceeded the requirements set by RGRTA; providing a two-year, unlimited mile Base Engine Warranty ("Base Warranty") along with a three-year, 300,000 mile Extended Major Components Warranty ("Extended Warranty"). See, Affidavit of David H. Tennant sworn to February 19, 2010 ("Tennant Aff."), Ex. A.

RGRTA took delivery of the first thirty buses in April 2004. The remaining twenty-nine buses were delivered in January 2006. RGRTA alleges that in September 2008, it began experiencing operational problems with an unidentified number of the buses. These problems included thick black smoke coming from the engines, oil accumulating on the engine housing, and a knocking sound coming from the engines. Am. Compl. ¶ 43. RGRTA contacted Cummins for assistance with these problems.

RGRTA alleges that Cummins had knowledge of similar defects in engines supplied to other customers. Specifically, RGRTA alleges

Cummins had knowledge of the defective design or manufacture of the fuel injectors and pistons and had changed the design or manufacture of these components due to their defective nature. Am. Compl. ¶¶ 44-50. RGRTA further alleges that Cummins, despite knowledge of these defects, failed to inform RGRTA of these defects and failed to diagnose and correct its engine problems. Id. at ¶¶ 69-73. RGRTA notes that, as a result of these defects, it sustained damage to its buses, including "at least two engine blocks" which required replacement of the entire engine and damage to an unspecified number of connecting rods. See Response of Petitioner ("Response") at 5.

RGRTA now brings claims against defendants Gillig and Cummins under theories of breach of contract, breach of express warranty, breach of implied warranty, and negligence. RGRTA also brings a claim for strict products liability against defendant Cummins. RGRTA alleges damages of an amount which exceeds the sum of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) for the repair and replacement of the defective engines, labor costs, and all incidental and consequential costs.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of all or part of a complaint for "failure to state a claim upon which relief can be granted." The complaint must contain facts sufficient "to raise the right to relief above the speculative

level" and state a claim for relief "that is plausible on its
face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).
While the complaint must give the defendant(s) notice of the claims
and their grounds, it need not contain specific facts. <u>Erikson v.
Pardus</u>, 551 U.S. 89, 93 (2007). However, the standard set by
<u>Twombly</u> "requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do." 550
U.S. at 570. When assessing a motion to dismiss, all factual
allegations in the complaint must be accepted as true. <u>See
Erikson</u>, 551 U.S. at 93. On a motion to dismiss, the court may
consider the facts alleged in the complaint, documents attached to
the complaint, and "documents that the plaintiffs either possessed
or knew about and upon which they relied in bringing the suit."
<u>Patane v. Clark</u>, 508 F.3d 106, 112 (2d Cir. 2007)(quoting <u>Rothman
v. Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000)). "Dismissal is
inappropriate unless it appears beyond doubt that the plaintiff can
prove no set of facts which would entitle him or her to relief."
<u>Sweet v. Sheahan</u>, 235 F.3d 80, 83 (2d Cir. 2000).

## DISCUSSION

### TIME BARRED CLAIMS

Any action for breach of contract or warranty arising from the
sale of goods is subject to a four-year statute of limitations.
N.Y. U.C.C. § 2-275(1). This cause of action accrues at the time
of delivery, regardless of whether the aggrieved party is aware of

the breach. § 2-275(2).  There is a narrowly construed exception under which the cause of action does not accrue until the breach is discovered, which applies where a warranty explicitly pertains to the future performance of the goods.  Id.  Warranties to repair or replace the product in the event that it fails to perform, without any promise of performance, do not constitute warranties of future performance.  See Rosen v. Spanierman, 894 F.2d 28, 31 (2d Cir. 1990).  As the warranties provided by Gillig and Cummins were to repair or replace defective parts and does not warrant future performance, this exception does not apply here.  Therefore, the plaintiff's breach of contract and warranty claims are subject to a four-year statute of limitations, beginning on the date of delivery of the buses.

The first thirty buses covered by the RGRTA-Gillig contract were delivered to RGRTA in April 2004.  Am. Compl. ¶ 34.  As RGRTA's causes of action for breach of contract and warranties accrued at the time of delivery, the statute of limitations for claims regarding these buses expired in April 2008.  Plaintiff did not experience problems with any buses until September, 2008.  Am. Compl. ¶ 42.  Therefore, any breach of contract or warranty claims regarding these thirty buses are time barred and hereby dismissed.

BREACH OF CONTRACT

RGRTA alleges that, pursuant to the terms of their contract, Gillig was required to deliver buses manufactured in accordance with the Request for Proposals ("RFP"). Am. Compl. ¶ at 80; Plaintiff's Ex. A. These buses were to be "manufactured in a professional and workmanlike manner in accordance with recognized and accepted manufacturing standards within the industry." Am. Compl. ¶ at 80. Cummins, under a contract with Gillig, was obligated to design and manufacture engines in a "professional and workmanlike manner in accordance with recognized and accepted industry standards." Id. at ¶ 84. RGRTA asserts that they were an intended third party beneficiary of this contract. Id. at 85. Gillig and Cummins breached their respective contracts by delivering buses with engines which failed to meet this standard. Am. Compl. ¶ 81, 86.

For a breach of contract claim Plaintiff must allege facts sufficient to show that (1) a contract existed between the parties; and (2) that the defendant violated a term of that contract. Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d Cir. 1996). The parties do not dispute the existence of a contract. However, the defendants claim RGRTA has failed to allege facts sufficient to state a plausible claim for recovery.

To survive a motion to dismiss, a complaint must contain facts which allow the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). Plaintiff's complaint must contain, in non-conclusory language, the specific terms of the parties' contract upon which liability is predicated. <u>Sirohi v. Trustees of Columbia Univ.</u>, 1998 U.S. App. LEXIS 22519 (2d Cir. Apr. 16, 1998)(citing <u>Sud v. Sud</u>, 211 A.D.2d 423, 424 (1st Dep't 1995)). In its complaint, RGRTA has offered only the conclusory statements that Gillig and Cummins breached their respective contracts by failing to deliver buses/engines "manufactured in accordance with both the specifications set forth in the RFP as well as the recognized and accepted manufacturing standards within the industry." Amended Complaint ¶ 81, 86. As RGRTA has not identified the terms of the respective contracts upon which this liability is predicated, it has failed to state a claim for breach of contract. RGRTA's breach of contract claims against Gilling and Cummins are, therefore, dismissed.

<u>BREACH OF IMPLIED WARRANTY</u>

**A. GILLIG**

RGRTA alleges that Gillig breached its implied warranties of merchantability and fitness for purpose as the buses were not "suitable and safe for the uses and purposes for which they were intended and for other reasonably foreseeable uses." Amended Complaint ¶ 100-01. In defense, Gillig argues that its warranty specifically stated that it did not apply to the engines and

expressly disclaimed any additional implied warranties or contractual obligations.

A seller may disclaim implied warranty of merchantability as long as the language mentions merchantability and is conspicuous. N.Y. U.C.C. § 2-316(2); See E. River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 873 (1986)("the manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies"). A written disclaimer is considered conspicuous if it is larger than or otherwise contrasts with the type used in the rest of the document. N.Y. U.C.C. § 1-201; Kolle v. Mainship Corp., 2006 U.S. Dist. LEXIS 28956, *11-12 (E.D.N.Y. Apr. 20, 2006)(finding exclusion of warranties in all capital letters and bold-faced type to be sufficiently conspicuous and adequate to disclaim implied warranties).

In the instant case, Gillig's warranty states that it "MAKES NO OTHER WARRANTIES, EXCEPT AS STATED HEREIN," and "THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTY EXPRESSED OR IMPLIED (including without limitation, any warranty of merchantability or fitness for a particular purpose, other than for use as a transit bus), but if such has legal status, it CANNOT EXCEED THE DURATIONS STATED HEREIN." See Macleod Aff., Ex. A (emphasis as in the original). This language belies RGRTA's claim of breach of implied warranty of merchantability. Gillig's warranty included language specific to the disclaimer of implied warranty of merchantability

in accordance with the requirements of § 2-316(2). As Gillig specifically and conspicuously disclaimed any implied warranty of merchantability, RGRTA could not have justifiably relied on this.

Additionally, RGRTA claims that Gillig breached an implied warranty of fitness for a particular purpose as the buses "were not suitable and safe for the uses and purposes for which they were intended or for other reasonably foreseeable uses." Am Compl. ¶ 101. This claim does not rise to the standard for pleadings set by Twombly, which "requires more than labels and conclusions." 550 U.S. at 570. Furthermore, even if taken as sufficiently plead, RGRTA's claim fails on its merits.

Pursuant to N.Y. U.C.C. § 2-315, an implied warranty of fitness for a particular purpose exists, unless there has been a modification or exclusion, where the seller has reason to know of a particular purpose for which the goods are required and the buyer is relying on the seller's skill or judgment in furnishing suitable goods. Any exclusion or modification must be made in writing. Id. To disclaim a warranty of fitness, it is sufficient for the contract to state that "there are no warranties that extend beyond the description on the face hereof." § 2-316(2). This allows contracting parties to determine which party will bear certain risks. As "a party cannot justifiably rely on a representation that is specifically disclaimed in an agreement." Dallas Aero., Inc. v. CIS Air Corp., 352 F.3d 775, 785 (2d Cir. 2003). Where

parties have expressly agreed on the allocation of risks, courts should not intervene.  Grumman Allied Indus. v. Rohr Indus., 748 F.2d 729, 735 (2d Cir. 1984).

Gillig's warranty included a written and conspicuous disclaimer of any implied warranty of fitness for a particular purpose other than use as a transit bus.  Macleod Aff., Ex. A.  As the buses in question were used as transit buses, this disclaimer is not necessarily dispositive of RGRTA's claim.  However, pursuant to § 2-316, a manufacturer may limit an implied warranty to the duration of their express warranty.  Meserole v. Sony Corp. of Am., Inc., 2009 U.S. Dist. LEXIS 42772 (S.D.N.Y. May 18, 2009)(holding that manufacturer could limit implied warranties to the duration of their express warranty if the limitation was clear and conspicuous).  The contract between RGRTA and Gillig required a warranty period of one-year for the bus and of two-years for the engine.  See Macleod Aff., Exs. A-B.  The warranty also clearly states that any implied warranty of fitness for a particular purpose is limited to the durations of the warranties expressly provided; one year for the bus and two years for the engine.  Id.

As the problems experienced by RGRTA occurred after these limitations had passed, any obligation by Gillig under this implied warranty of fitness had expired.  RGRTA's claim of breach of implied warranty of fitness for purpose is, therefore, dismissed.

**B. CUMMINS**

As noted above, implied warranties of merchantability and fitness for a particular purpose may be disclaimed by conspicuous language in a warranty. Here, Cummins has expressly and conspicuously disclaimed any implied warranties of merchantability or fitness for a particular purpose. <u>See</u> Tennant Aff., Ex. A. The disclaimer of these warranties is in a separate section of the warranty with a clear header of "Limitations" in large, bold font. <u>Id</u>. The specific language relating to merchantability and fitness for purpose, also written in bold font and all capital letters, states that "CUMMINS MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OR OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." <u>Id</u>. (emphasis as in the original). This disclaimer is adequate under New York law. <u>See</u> <u>Kolle</u>, 2006 U.S. Dist. LEXIS 28956, *11-12. Therefore, RGRTA's claim of breach of implied warranty against Cummins is hereby dismissed.

<u>BREACH OF EXPRESS WARRANTY</u>

**A. GILLIG**

RGRTA alleges that Gillig warranted that the buses and the engines would be free from defects and that "the buses and/or the engines were improperly designed and/or manufactured and defective." Am. Compl. ¶¶ 89-90. RGRTA asserts that Gillig expressly obligated itself, as an agent of Cummins, to remedy the

defective engines.  In support of this claim, RGRTA points to language in the Gillig warranty which states:

> While Gillig **DOES NOT WARRANT** some major component assemblies not manufactured by Gillig and identified as Category 3 items in the attached (such as the engine and transmission), Gillig is **OBLIGATED UNDER THIS WARRANTY** and as an agent of those manufacturers, to resolve disputes and be responsible to ultimately ensure compliance with the terms stated herein.  However, those warranties or extended coverages are **defined in those manufacturer's own warranties** and per their terms and conditions, and as administered by their own support networks.

Macleod Aff., Ex. A (emphasis as in the original).  However, RGRTA's interpretation of this text is flawed.

When interpreting contracts, everything within the four corners of the document must be considered.  See <u>Magnus Precision Mfg., Inc. V. TPS Intern., Inc.</u>, No. 08-CV-6325, 2009 WL 367810, *2 (W.D.N.Y. Feb. 12, 2009).  Where possible, the court should interpret a contract in a way that gives meaning to all of its terms.  <u>U.S. Naval Inst. V. Charter Commc'ns, Inc.</u>, 875 F.2d 1044, 1049(2d Cir. 1989).  Here, RGRTA focuses completely on the language that obligates Gillig, as an agent of Cummins, to be responsible for ensuring compliance.  However, RGRTA  ignores the remainder of

that statement which limits Gillig's obligation to "the terms stated herein." Macleod Aff., Ex. A. This term does not require Gillig to enforce the terms of Cummins' separate warranty.

Gillig's warranty explicitly states that it "DOES NOT WARRANT" major components such as the engine. See Macleod Aff., Ex. A (emphasis as in the original). The plain language of the contract term referred to by RGRTA, when read as a part of the entire contract, only obligates Gillig to ensure compliance with the terms stated in Gillig's agreement with RGRTA. There are no terms in the Gillig-RGRTA agreement which refer to the Cummins engines. Id. at 3(referring to the warranty coverage of Detroit Diesel Series 50 engines). If the Cummins engine warranty information provided to RGRTA by Gillig were incorporated into this agreement, this term would require Gillig to ensure compliance with the two-year Base Warranty. See Macleod Aff., Ex. B.

At most, Gillig was obligated to resolve disputes and ensure Cummins' compliance within the 2-year basic engine warranty. This warranty would have expired in April 2006 for the first thirty buses delivered and in January 2008 for the remaining twenty-nine buses. As RGRTA began experiencing problems in September 2008, this warranty had expired for all fifty-nine buses. Therefore, RGRTA's claim of breach of express warranty by Gillig has not stated a claim for which relief can be granted and is hereby dismissed.

**B. CUMMINS**

RGRTA asserts a claim of breach of express warranty against Cummins, alleging that the engines were improperly designed and manufactured and defective. Am. Compl. ¶ 96. Specifically, RGRTA states that Cummins' engines used defective pistons and fuel injectors. Am. Compl. ¶ 48-55. The defective pistons allegedly became loose and moved about within the engine cylinders, causing engine block damage to two engines when they became completely debonded. Id. As a result of the allegedly defective fuel injectors, RGRTA was required to replace the fuel injectors in an unspecified number of buses. Id. ¶ 55.

Cummins provided RGRTA a two-year Base Warranty, covering any engine failure resulting from a defect of material or workmanship. See Tennant Aff., Ex. A. RGRTA concedes that this Base Warranty had expired for all fifty-nine of the buses. Response at 1. Cummins also provided a three-year Extended Warranty covering "Warrantable Failures of the Engine cylinder block, camshaft, crankshaft, connecting rods, and Cummins fan clutch (Covered Parts)." Id. This warranty states that "Cummins will pay for the repair or, at its option, replacement of the defective Covered Part and any Covered Part damaged by a Warrantable Failure of the defective Covered Part." Id. The twenty-nine buses delivered in January 2006 were still under this Extended Warranty when RGRTA notified Cummins of its engine problems. However, neither the

pistons nor the fuel injectors are covered by Cummins' Extended Warranty. RGRTA has noted that it had to replace connecting rods, the damage to which may have been the result of a defect in the rods themselves or may have been a result of Cummins' failure to diagnose the defective pistons. See Pet. Response at 5, fn 5. This possible defect in the connecting rods was not alleged in the petitioner's amended complaint, where RGRTA claimed that the engine damage was caused by fuel injectors and pistons known by Cummins to be defective. Am. Compl. ¶¶ 69-73. As RGRTA has not alleged that a covered part was defective, they are not entitled to replacement of the damaged engine parts under the Extended Warranty. Accordingly, RGRTA's claim of breach of express warranty against Cummins is dismissed.

NEGLIGENCE

RGRTA claims that the damage caused to their buses resulted from Defendants' negligence in failing to inspect, test, and discover the defective nature of the engines. Am. Compl. ¶ 111. To recovery under a negligence theory, a plaintiff must establish (1) a legally recognized duty, (2) breach of the duty, (3) a causal connection between the breach and the resulting injury, (4)injury or damage resulting from the breach. McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. N.Y. 1997). Where the relationship between the parties is contractual in nature, damages which are purely economic are not recoverable under tort theories such as

18

negligence. See East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 868-70 (1986). This economic loss doctrine seeks to preserve the role of contract and warranty law by precluding tort liability where a product causes only monetary harm. Id. At 868. However, under New York law, a Plaintiff may bring a cause of negligence where a legal duty independent of contractual obligations has been breached. Pandisc Music Corp. v. Red Distrib., LLC, 04 Civ. 9365, 2005 U.S. Dist. LEXIS 4336, *2 (S.D.N.Y. Mar. 18, 2005); see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987).

Here, the remedies sought by RGRTA are for the cost of repairing and replacing the defective engines. Both defendants assert that the negligence claims against them fail to state a claim as RGRTA is seeking only economic losses and has not alleged a duty extraneous to the parties contractual obligations.

RGRTA does not allege any non-contractual duty owed to it by Gillig but claims that the negligence cause of action against Cummins falls within various exceptions to the economic loss rule. New York courts recognizes exceptions to the economic loss rule where the defendant has a duty independent of contractual obligations or where defendant's conduct causes damage to property not subject to the contract. RGRTA also asserts Cummins, as a manufacturer, had an independent duty to warn of a dangerously defective product.

**Independent Duty Exception**

Under the independent duty exception, RGRTA claims that by undertaking to diagnose and remedy the engine defects, Cummins' undertook a duty to do this work in a reasonable and workmanlike manner. New York courts have acknowledged an exception to the economic loss doctrine, finding an independent duty to perform any repairs undertaken in a workmanlike manner. See <u>Levine v. Sears Roebuck & Co., Inc.</u>, 200 F.Supp.2d 180, 186-87 (E.D.N.Y. 2002)(duty to perform repairs under service warranty in a reasonable and workmanlike manner); <u>Vitol Trading S.A., Inc. v. SGS Control Servs., Inc.</u>, 680 F. Supp. 559, 567(S.D.N.Y. 1987)(finding a breach of duty of workmanlike performance where parties had contracted to inspect product). However, this exception applies only to contracts for services, not to contracts for the provision of goods. <u>Inter Impex S.A.E. v. Comtrade Corp.</u>, 00 Civ. 0133, 2004 U.S. Dist. LEXIS 24431, *17 (S.D.N.Y. Dec. 2, 2004). Where the contract in question called for the provision of both goods and services, courts look to main purpose of the contract. <u>See</u> <u>Orlando v. Novurania of America, Inc.</u>, 162 F.Supp. 2d 220 (S.D.N.Y. 2001).

Cummins was contractually obligated to provide and warranty engines for the RGRTA buses. The main purpose of the contract was the provision of goods, the engines, for use in RGRTA's buses. The services warranted by the contract, the repair and replacement of defective parts, were secondary to the provision of the engines.

As Cummins' contract with Gillig was primarily for the sale of goods, the independent duty exception to the economic loss doctrine does not apply.

**Damage to Other Property**

RGRTA asserts that the negligence claim against Cummins is not prohibited by the economic loss doctrine as the defective nature of the engines caused damage to other property. Courts have held that a claim for tort liability is available where a product causes damage, not only to itself, but to other property as well. See e.g., Trump Int'l Hotel & Tower v. Carrier Corp., 524 F.Supp. 2d 302 (S.D.N.Y. 2007). RGRTA argues that Cummins is liable under the "other property" exception as the engines and the buses are separate property, not integrated units. See Response at 17-19. However, vehicles are consistently treated as a single integrated unit, not as separate parts. See Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 879 (1997)(holding that the product at issue was the entire ship, not just the hydraulic system); Bocre Leasing Corp. v. GMC, 84 N.Y.2d 685 (N.Y. 1995)(holding that tort liability not available for damage to helicopter sustained as a result of allegedly defective engine).

RGRTA claims that, as a result of Cummins' negligence, it suffered damages to its buses and various bus engine parts. See Am. Compl. ¶ 51-58. These buses and engines were integrated units subject to contractual warranties. As RGRTA does not allege damage

to property other than the buses, its negligence claim does not fall within the "other property" exception to the economic loss doctrine.

## Duty to Warn

RGRTA alleges that Cummins, as the manufacturer of a product with known defects, was under an independent duty to inform RGRTA of the defective nature of the engines. Am. Compl. ¶ 69-73. This duty creates an exception to the economic loss doctrine as it goes not to the quality of the product expected but to the type of conduct governed by tort law as a matter of public policy. See Miller Indus. v Caterpiller Tractor Co., 733 F.2d 813, 816 (11th Cir. 1984); Sukljian v. Charles Ross & Son Co., 69 N.Y.2d 89, 95 (1986). This exception applies where the product in question is inherently dangerous, or was known to be defective before the product was transferred to the buyer for use. Billiar v. Minnesota Mining and Manufacturing Co., 623 F.2d 240 (2d Cir. 1980); Texas Eastern Transmission Corp. v GE, 1984 U.S. Dist. LEXIS 16688, *12 (S.D.N.Y. May 15, 1984)(dismissing claim of negligence where manufacture discovered condition after equipment was purchased); Miller Indus. v. Caterpillar Tractor Co., 733 F.2d 813, 815-16 (11th Cir. 1984)(finding manufacturer negligent for economic damages where the defects in the boat engine were known before the engine was installed in Plaintiff's boat).

The Court in <u>Texas Eastern Transmission Corp.</u> held that, as the turbine seal pins were not inherently dangerous at the time of the purchase, GE was not negligent for failing to warn a purchaser of a subsequently discovered condition that could cause the equipment to fail. 1984 U.S. Dist. LEXIS 16688, *12. This exception has not been applied where the parties relationship was governed by contract and the loss was purely economic. The Court noted that it would be "unwise to create tort liability for a duty that was not anticipated in the contract of sale between the parties or the cases." <u>Id</u>.

In the instant case, it is not alleged the engines provided to RGRTA by Cummins were known to be defective when the buses were manufactured and delivered. Like the defendant in <u>Texas Eastern Transmission Corp.</u>, Cummins allegedly became aware of the conditions causing fuel injector and piston failure after the buses were already in use and failed to relay this information to RGRTA. As Cummins had no duty to inform RGRTA of the potential for equipment failure resulting from conditions discovered after the sale, RGRTA cannot use this exception to circumvent the economic loss doctrine.

Purely economic losses can be ensured against by contract or warranty, therefore, there is little reason to impose an extraneous tort duty on manufacturers. <u>E. River S.S. Corp. v. Transamerica Delaval</u>, 476 U.S. 858, 871 (U.S. 1986). Here, RGRTA did bargain

for economic losses of this type by obtaining warranties for the buses and the engines. RGRTA cannot be compensated under a tort cause of action simply because it did not receive the benefit of its contractual bargain. RGRTA has not alleged that Gillig owed them any duty independent of their contract. RGRTA has also failed to establish that Cummins owed them a legal duty which falls within a recognized exception to the economic loss doctrine. Therefore, the negligence cause of actions against Gillig and Cummins are barred under the economic loss doctrine and are hereby dismissed.


STRICT PRODUCTS LIABILITY

RGRTA brings a claim of strict products liability against Cummins, alleging that the Cummins engines were manufactured and designed so as to be unreasonably dangerous and defective. Am. Compl. ¶ 123. Claims of strict products liability are subject to the same economic loss rule discussed with respect to RGRTA's negligence claims. New York law precludes recovery of economic loss under a strict liability theory. Consolidated Edison Co. v. Westinghouse Elec. Corp., 567 F. Supp. 358, 367 (S.D.N.Y. 1983). Where the parties are under a contractual relationship, recovery of economic loss is not available regardless of whether the contract is for the provision of goods or of services. See e.g., Stafford v. International Harvester Co., 668 F.2d 142, 146 (2d Cir. 1981); Texas Eastern Transmission Corp. v. GE, 1984 U.S. Dist. LEXIS 16688

(S.D.N.Y. May 15, 1984); <u>Consolidated Edison Co.</u>, 567 F.Supp. At 367; <u>Milau Associates, Inc. v. North Ave. Dev. Corp.</u>, 42 N.Y.2d 482, 487 (1977).  As RGRTA has only sustained economic losses, recovery under strict products liability is not available. Therefore, RGRTA's strict products liability claim against Cummins is dismissed.

### CONCLUSION

For the aforementioned reasons, the motions to dismiss brought on behalf of Gillig, Corp., Cummins Inc., and Cummins Northeast, Inc., are hereby granted in full.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 28, 2010